CARLISLE v. SPAIN.

CITY OF MT. CLEMENS v. CARLISLE.

1. Appeal and Error—Right to Appeal—Appealable Interest.

The mayor and clerk of a city, who have filed a cross-bill in the nature of a bill of interpleader, have an appealable interest in a suit between the assignee of a public contractor and his laborers and materialmen to determine priority of their claims against the unpaid portion of the fund due the contractor from the city, it appearing that there are claims in excess of the fund and that no bond to secure laborers and materialmen was given by the contractor, so that if the decree appealed from, adjudging that no priority exists, is allowed to stand, the mayor and clerk will be personally liable to the laborers and materialmen for the deficit.

2. Municipal Corporations—Paving Contracts—Assignees of Contractor—Rights as Against Materialmen.

Where a city paving contract provides that an assignment or order by the contractor shall hold good only as against the net sum reported by the city engineer as due the contractor after the final adjustment of all claims by the council on the city or other accounts as authorized by the contract, an assignee is postponed to a materialman, though the money received from the assignee was applied in payment of labor and materials.

3. Estoppel—City Council—Paving Contract.

A city is not estopped to contest the priority of the claim of the assignee of a public contractor over that of the materialmen, nor does it waive its right under the contract to postpone the assignee to the materialmen, by the action of the city council in passing a resolution authorizing the mayor and clerk to pay the assignee, where the resolution was rescinded before the assignee took any action or in any way changed his situation in reliance thereon.

4. Assignments—Right to Assign—Restrictions in Contract.

Where a city paving contract provides that an assignment or order by the contractor shall hold good only as against the net sum reported by the city engineer as due the contractor

after the final adjustment of all claims by the council on the city or other accounts as authorized by the contract, including claims for labor and materials, a claim that such provisions of the contract were inserted solely for the benefit of the city, and do not affect the rights of assignees as between themselves and the original contractor, is untenable.

5. CONTRACTS — PUBLIC POLICY — EXCLUDING JURISDICTION OF COURTS.

A provision in a city paving contract authorizing the common council to determine the claims of materialmen is not contrary to public policy, where it does not wholly exclude the jurisdiction of the courts.

Appeal from St. Clair; Tappan, J.   Submitted November 16, 1906.   (Docket No. 34.)   Decided February 5, 1907.

Bill by William N. Carlisle against William J. Spain and Henry Gilroy for the dissolution of a partnership and for an accounting.   The city of Mt. Clemens, John H. Westendorf, mayor, and William F. Kracht, city clerk, filed a cross-bill in the nature of a bill of interpleader against Margaret M. Carlisle and others to determine the disposal of certain moneys, and for other relief.   From the decree rendered, complainants in the cross-bill appeal. Modified.

*William T. Kelly* and *Robert F. Eldredge*, for complainants in cross-bill.

*Avery & Walsh*, for defendant Carlisle.

MONTGOMERY, J.   The original bill of complaint was filed for a dissolution of a copartnership composed of the complainant and the defendants Spain and Gilroy.   The defendant the city of Mt. Clemens was named in the bill, and an injunction prayed, with the purpose of preserving the property of the copartnership, which it would appear consists of a claim against the city for work done by the copartnership in constructing a pavement.   The cross-bill is filed by the city of Mt. Clemens and John H. Westen-

dorf, its mayor, and William F. Kracht, its clerk. The cross-bill is in the nature of a bill of interpleader, but it also prays other relief.

The real issues tried in the court below related to the priority of rights as between assignees of the money due on the contract with the city and the materialmen and workmen on the paving job. It is contended that this appeal should be dismissed for the reason that the city has no interest in this question of priority between claimants. If this be conceded, the mayor and clerk are as individuals interested, as it appears that no bond has been given by the contractors for the protection of the labor and materialmen. It would follow that if the fund was in whole or in part applied to the payment of orders negotiated by W. J. Spain & Co., leaving a deficit so that the materialmen cannot be paid in full, these two officers would be liable to an action. In their own protection, then, if the right and equity be so, they are deeply interested in seeing to it that the labor claims and materialmen are first paid. The appeal was as to them properly taken.

In the specifications, made a part of the contract between W. J. Spain & Co. and the city, were the following two provisions:

"*Protection for labor and material furnished.* The contractor for himself or for any subcontractor under him shall well and truly pay or cause to be paid as the same may become due all indebtedness which may become due any person, firm or corporation, on account of any labor or material furnished in connection with this contract of which these specifications form a part; and in case of his failure so to do, and upon the sworn statement of any unpaid claim for labor or material as above being filed with the common council a sum of money sufficient to cover such claim or claims shall be retained from any moneys due or to become due said contractor on this contract, and if any claim or claims be fully substantiated to the satisfaction of the council, said council shall pay such claim or claims from the money so retained, any residue to be paid to said contractor on the completion of the work; and the contractor hereby further agrees that he

will pay to the city of Mt. Clemens, through its common council, the sum of five dollars per hour for all the time spent by said council in settling disputes or claims filed under this clause of these specifications, which are in all respects a portion of the contract.

"*Assignment of contract or moneys.* The first party shall not assign or transfer this contract or sublet any portion of the work in it without the consent in writing of the council being first obtained. Nor shall he give an order upon the city for the payment of money on this contract without first giving notice in writing of such intention to the common council at least twenty-four hours in advance thereof, nor shall any such assignment or orders of money hold good except as against the net sum reported by the city engineer as due the contractor after the final adjustment of all claims by the council on the city or other accounts as authorized by this contract. Nor shall the council accept any such order or assignment without due notice to them and first hearing any of the objections from the city engineer."

An assignment of $1,250 of the moneys to grow due was made to M. M. Carlisle, and one of $300 to the Ullrich Savings Bank. There was also assigned to W. J. Clancy & Co., materialmen, for the purpose of paying for brick furnished, the sum of $2,372.27. There was due to other materialmen $2,237.75. There remains in the hands of the city the sum of $5,347.82; so that, if the materialmen are paid in full, there would remain for the payment to M. M. Carlisle and the Ullrich Savings Bank only $737.80. If the assignments are given precedence, the materialmen will not be paid in full, and must resort to an action to recover of the mayor and clerk. The circuit judge stated his conclusions as follows:

"It is my conclusion that by virtue of the conditions of the contract between Spain & Co. and the city of Mt. Clemens, the city was legally entitled to be informed whether or not its money was to be expended for the payment of bills for labor and materials for this pavement. Every person who dealt with the company or who took an assignment of the contract or any portion of it had notice of this right of the city. It is also my conclusion

147 MICH.—11.

that the proofs do not indicate that the city has waived this right. While the clause pertaining to the retention of the money by the city and the determination by the council as to the validity of the claims and the proofs to support the same is probably void as applied to a case where it is sought to thus enforce the exclusion of the court's action upon the claims presented, yet it is valid to secure to the city a right to reliable information from all claimants as to the nature of their claims and a showing as to what they are for. In the present case it is not sought to exclude the court from a consideration of the claims, but, instead, the court's aid is sought by the city.

"If the information of facts presented with the claim lead to a well-founded conclusion that the moneys sought to be assigned to third parties are to be used for purposes unconnected with the pavement, and that conditions indicate that there is likely to be a deficiency if the assigned claim is paid, there can be no doubt of the right of the city to hold such assignment in abeyance until labor and material claimants are paid in full, in case these comply with the requirements for the notice.

"It is also my conclusion that the conditions of the contract make it incumbent upon claimants, whether assignees or materialmen, to furnish this information, that their claims were for material or labor or money expended for these. The proofs show that none of the claims have met this burden prior to the commencement of this action, except the firm of Carland & Clancy.

"In the case of Carland & Clancy I find that the contract and assignment between that company and W. J. Spain & Co. specify that claimants and assignees were to furnish the brick that went into the pavements and provided for in the contract of W. J. Spain & Co. with them.

"That after the filing of this assignment and contract the city authorities appointed an inspector, and in the usual course of business this inspector culled and approved of the brick used. By means of such an assignment and the course pursued by Carland & Clancy they have met the requirements of the contractors' contract to furnish the city with correct information as to the nature of their assigned claim.

"In the case of the assignment of M. M. Carlisle and the Ullrich Savings Bank it is my conclusion that they stand upon equal footing with each other, and also with

the remainder of the claimants for compensation for materials and labor.

"Proofs show that the moneys furnished by these claimants were all paid out for labor and materials that went into the pavements. They stand as the equitable assignees of the claims for materials and labor that might otherwise now be presented herein.

" I further find that, inasmuch as all of these claimants failed to make a proper showing as to the character and validity of their respective claims prior to the hearing herein, none of them are entitled to priority.

"Inasmuch as the city has submitted these questions for adjudication, and all parties are before the court and have now furnished the information as to the character of their claims as required by a reasonable interpretation of the contract in relation to the city's rights therein as guaranteed by the contract, I know of no reason why the entire controversy may not be determined and the fund distributed by an order made herein."

As none of the defendants have appealed, the only question which we need consider is whether the two assignments to Carlisle and the Ullrich Savings Bank should be postponed to the materialmen. If the contract is available to Westendorf and Kracht, it is clear that the fund is to be reserved for the materialmen as against the rights of a mere assignee. The language of the specifications is unambiguous that an assignment or order shall hold good only as against the net sum reported by the city engineer as due the contractor after the final adjustment of all claims by the council on the city or other accounts as authorized by the contract.

It is contended on behalf of the assignees Carlisle and the Ullrich Savings Bank that the city is estopped from asserting that the assignees should be postponed to the materialmen—that the right to withhold payment to the assignees was waived. The council did on the 22d of November, 1904, pass a resolution authorizing the mayor and city clerk to pay to W. J. Spain & Co. or assignees the balance unpaid on the contract, but this resolution was rescinded on the 8th of December, after the original bill was filed. The elements of estoppel are wanting. The

assignees took no action based upon the first resolution. Their situation was in no way changed.

It is contended that the provisions of the contract above quoted were inserted solely for the benefit of the city, and cases are cited in which it is held that provisions contained in similar contracts prohibiting assignments are held not to affect the rights of assignees as between themselves and the original contractors. If restrictive provisions of this contract were limited to a restriction of the right of assignment, these cases would be quite in point; but the circuit judge rightly held that the present contract goes further, and provides that assignments shall hold good only for the net amount after provision for materialmen was made.

The contention is made that the provision of the contract authorizing the common council to determine the claims of materialmen is against public policy. We do not read this provision as excluding wholly the jurisdiction of the courts, and see no valid objection to the provision which authorizes the city to withhold so much of the contract price as shall protect the materialmen.

We are not able to assent to the conclusion of the circuit judge that the assignees Carlisle and the Ullrich Savings Bank are entitled to stand on an equality with the materialmen. It is clear that they are not in terms protected by the contract. On the contrary, they are entitled to share only in the net sum after payment of the materialmen.

The decree should be so modified as to provide for the payment of all the materialmen first, including W. J. Clancy & Co. The balance will be applied pro rata to the payment of M. M. Carlisle and the Ullrich Savings Bank after payment of the costs of this appeal out of the fund.

CARPENTER, OSTRANDER, HOOKER, and MOORE, JJ., concurred.